PAYNE v. BOARD OF SUP'RS OF TALLAHATCHIE COUNTY.*

[106 So. 625.   No. 25414.]

(Division B.   Jan. 11, 1926.)

1. HIGHWAYS. *Road district held legally created and organized, in view of minutes of county board of supervisors.*

   Road district *held* legally created and organized under Laws 1910, chapter 149, in view of minutes of county board of supervisors, though there were petitions for organization of two districts at same time.

2. HIGHWAYS. *Only election and not petition held necessary for second issue of bonds of road district.*

   For second issuance, in 1925, of bonds of a road district organized, in 1910, under Laws 1910, chapter 149, election only, and not petition, *held* necessary; Laws 1920, chapter 207, as to issuance of bonds, and not chapter 277, as to creation of districts, governing.

3. HIGHWAYS. *Amount of bonds issuable by road district unaffected by issue by drainage district overlapping or in it.*

   Laws 1920, chapter 207, section 5, *held* to limit only the amount of bonds which a separate road district as such can issue, so that its limit is unaffected by bonds issued for a drainage district overlapping or within the road district.

*Corpus Juris-Cyc., References: Highways, 29 C. J., pp. 557, n. 26 New; 566, n. 51; 567, n. 67.

APPEAL from chancery court of Tallahatchie county, first district.

HON. C. L. LOMAX, Chancellor.

Suit by the board of supervisors of Tallahatchie county to validate road bonds, opposed by G. A. Payne. From decree of validation, Payne appeals. Affirmed.

*Cowles Horton,* for appellant.

I.   These bonds cannot be validated for the reason that no petition was ever filed for this issue and the board has never acquired jurisdiction of the subject-matter.   Laws of 1920, chapter 277, section 2, the last amendment of Laws of 1910 under which these bonds purport to be issued, expressly provides for the filing of a petition of twenty per cent of the qualified electors of the district, and we submit that unless the petition is filed the board was simply acting without any authority whatsoever.   *Borroum* v. *Purdy Road District,* 131 Miss. 778; *Bryant* v. *Board,* 133 Miss. 714; *Brooks* v. *Board,* 102 So. 778.   See also: *Hester* v. *Board,* 134 Miss. 217, 98 So. 529; *Thomas* v. *Lee County,* 98 So. 232; *Evans* v. *Wright,* 126 Miss. 712; *Wallace* v. *State,* 104 Miss. 94; *Craft* v. *DeSoto Co.,* 79 Miss. 618; *Board* v. *Weatherford,* 114 Miss. 270; *County* v. *Bunckley,* 85 Miss. 713.

The argument was made however, that since Laws of 1920, chapter 207, required an election in all cases and also provided that notice of the board's intention to issue the bonds need not be given, the board would have the right to order the election without any petition.   This argument ignores the positive requirement of the statute, chapter 277, itself expressly requiring that an election be held before the bonds can be issued.   Neither chapter 207 nor chapter 277 of the Laws of 1920 undertakes to invest the board with jurisdiction to proceed in this matter *sua sponte,* or for any other reason on earth than because the proper petition has been filed. On the other hand, when and if the proper petition is filed, it becomes, in the language of section 2, chapter 277, *"the duty"* of the board to order the election.   But if chapter 207 had never been enacted, and if chapter 277 had been written as it was written before this amendment, an election would still have been necessary to issue bonds under this act on account of the provisions of laws of 1918, chapter 209, section 2, prohibiting the

incurring of interest bearing indebtedness without an election. *Board* v. *Warren,* 121 Miss. 312.

The cases of *Borroum* v. *Purdy Road District, Bryant* v. *Board, Ellis* v. *Tillman, Brooks* v. *Board,* were all decided by this court under the identical laws which exist at this time, and while chapter 207, Laws of 1920, was, as it now is, in full operation. If an election could cure the fundamental defect and bring to life an order void at its inception for want of jurisdiction, those cases. could never have been determined as they were, and, besides this, the court would never have decided in *Lester* v. *Miller,* 76 Miss. 309, that the election there involved was a nullity because the board's record failed to show that it was properly *petitioned for.*

II.  This issue cannot be validated because these bonds, when added to the outstanding bonded indebtedness against appellant's property, will amount to much more than fifteen per cent of its assessed value. The learned chancellor held, however, that drainage bonds could not be included in determining this question and, with such bonds excluded, the limitation was not exceeded. The question before the court is, therefore, whether drainage bonds are included within the limitation fixed by the law; if they are, and we contend that this is true, this issue is clearly excessive and contrary to the legal limitation. It must be conceded by all that "the power to issue the bonds must be found in the statute, and how the bonds are to be issued, the amount thereof, and the date of payment, must be in strict conformity to the statute conferring the power to issue." *Rhodes* v. *Robinson,* 109 Miss. 118. Let us also not forget that "no voting, no election no sort of authorization, even if unanimous could warrant" a bond issue in excess of the limitations fixed by the law. *Clarksdale* v. *Broadus,* 77 Miss. 671. A certain and specific limitation has been fixed in all cases and regardless of circumstances, necessity or expediency. Laws of 1920, chapter 207, section 5. See

*Love* v. *Yazoo County,* 111 Miss. 802; *Middleton* v. *County,* 122 Miss. 674.

If the construction placed on this act by the appellees is correct, then, by judicial decision, we necessarily write into the act an exception in favor of drainage bonds. If this can be done, then what principle would prevent other exceptions in favor of other bonds, which might be considered just as important as drainage bonds? Whatever the payment which the taxpayer makes, whether it is called a general tax or a special assessment, does not and cannot affect the fact that the drainage bonds do, in fact, constitute a part of the "outstanding bonded indebtedness" and that the plain requirement of the law is that the *bonds* outstanding shall never exceed a certain amount. In *Hawkins* v. *Carroll,* 50 Miss. 759, the court tells us that when the words of a statute convey a meaning "apparent on the face of the instrument," then that is the meaning which alone can be said to be the one intended to be conveyed; "and neither the courts nor the legislature have a right to add to or take from that meaning." See, also, *Peeler* v. *Peeler,* 68 Miss. 147; *Wells* v. *McNeill,* 93 Miss. 407; *Beard* v. *Lee County,* 51 Miss. 547; *Foote* v. *Brown,* 60 Miss. 161; *Smith* v. *Vicksburg,* 86 Miss. on page 583; *Gumbel* v. *Koon,* 59 Miss. 266.

If the court should determine that "bonded indebtedness" for drainage purposes was not intended by the legislature to be included when it used the language it employed, this will be clearly a departure from the *language* of the act and would justify future claims that some other "bonded indebtedness" would not also be included and thus the limitation would entirely disappear.

*Chambers & Trenholm* and *L. D. Anderson,* for appellee.

I. *Could the board initiate a second or subsequent issue of bonds?* Appellant complains that the board had

no right to initiate the proceedings for the present issue of bonds, and cites a number of cases all of which deal with the formation or organization of special taxing districts. In *Borroum* v. *Purdy,* 131 Miss. 778, the court held that the recitations of the order were conclusive as to the number of petitioners, except on appeal, and condemned the district for taking in more territory than was described in the petition. *Bryant* v. *Board,* 133 Miss. 714, is another case of too much territory. The other cases cited by appellant, all go to the proposition that there must be a petition to give the board authority *to create a district,* but we do not find in a single one of them a holding to the effect that *a petition is necessary* for the issuance of bonds. One of them does hold that under the particular statute involved a petition was necessary before the board could levy a school tax. Of course, we agree with the principle announced and applied in these cases.

But the question here is, what is the authority of the board *after* a district has been created upon a proper petition? For answer, see section 1, chapter 149, Laws of 1910. Thus under the law as it stood when this district was created, no petition was required for the issuance of bonds, but they followed as a matter of course, within limits, at the discretion of the road commissioners and the board, *from time to time.*

Chapter 176, Laws of 1914, amending chapter 149, Laws of 1910, was the act in force when the board issued bonds for this district in 1919. Sections 1, 2, and 3 of this act are almost identical with the same numbered sections in the act of 1910, and not one word appears in the entire act requiring a petition for the issuance of bonds, but again that matter is left to the Road Commissioners and the board. In the meantime, chapter 209, Laws of 1918, had been adopted, by which an election was made mandatory. It is true a petition was filed for the issuance of these bonds in 1919, but it was not necessary. An election was held, and carried.

When the bonds involved here were proposed, was chapter 277, Laws of 1920, amending chapter 176, Laws of 1914, the statute in force? Sections 1, 2 and 3 of this act are practically identical with the same numbered sections in the acts of 1910 and 1914, except that the limit is raised to fifteen per cent of the assessed valuation, and it is provided that where bonds have already been issued to the extent of ten per cent in districts already created, such districts may go ahead and issue another five per cent in bonds, and no mention is made of any petition for that purpose. Why not? Because no petition had ever been required for the issuance of bonds, but only for the creation of a district. And, by chapter 207, Laws of 1920, also in force when the bonds here involved were proposed, the board is authorized, by section 1, to issue bonds for all purposes provided by law, and, by section 2, to declare its intention so to do by order fixing the amount, purpose and date of election. Nothing is said about a petition. We admit, of course, that the board could not initiate the creation of a new district.

It is our contention, therefore, that under the particular statute before us, a petition is necessary as a prerequisite to the creation of a separate road district having power to issue bonds, but that no petition is necessary for the issuance of bonds, either in the first instance, or at any time thereafter. All that is required, after the district has been created pursuant to a petition, is notice of intention by the board to issue the bonds, followed by an election where one is required.

II. *Are bonds of a drainage district within a road district to be included in the debt of the road district in determining the amount of bonds the road district may issue?*

Appellant contends that the total bonded debt of the road district under consideration, including the bonds here involved, will exceed the fifteen per cent limitation provided by the act, because, in addition to the eighty

thousand dollar bonds here involved, there are now out-
standing fifty-five thousand dollars worth of previous
bonds of this district, and eighty thousand dollars of
bonds of Ascalmore Drainage District, seven thousand
dollar bonds of Payne Consolidated School District, and
eight hundred dollars of bonds of Cascilla Consolidated
School District, which drainage and school districts are
wholly within the road district, and about sixty thous-
and dollars of bonds of Patterson Bayou Drainage Dis-
trict, which lies partially within the road district, such
amount being estimated as the proportion of the total
bonds of said drainage district applicable to so much of
said drainage district as lies within the road district.

We will admit the general propositions laid down by
appellant as sustained by *Rhodes* v. *Robinson,* 109 Miss.
118, and *Clarksdale* v. *Broadus,* 77 Miss. 671, cited in
his brief. We also admit that section 5, chapter 207,
Laws of 1920, is the last statute applicable in determin-
ing the limit of bonds which may be issued by the dis-
trict under consideration.

The main difficulty with appellant's contention is that
he is looking at the aggregate of bonds issued for all pur-
poses, by whomsoever issued, and not at the aggregate
amount of bonds which may be issued for any one pur-
pose or by any one distinct taxing district. Clearly, it
was never the intention of the legislature to say that
when all of the bonds issued by any one county and all of
the various taxing districts within the same aggregate
the sum of fifteen per cent of all the taxable property in
the county, no further bonds could be issued, or that
when any one piece of property was so located as to be
in a school district, a road district and a drainage dis-
trict, that the bonded indebtedness of the three districts
should not exceed fifteen per cent. Suppose a property
owner had one section of land in a road district that had
issued its fifteen per cent of road bonds, and suppose a
school district or drainage district was organized which
included his section of land. If appellant's contention is

correct, this one property owner could defeat the issuance of *any* school or drainage bonds, as road bonds had already been issued against his property to the extent of fifteen per cent. The question seems to be answered by this court in *Love* v. *Board of Supervisors,* 111 Miss. 802, 72 So. 230.

We conclude, therefore, that it is only the debt of the particular taxing district, irrespective of the fact that it may include or overlap upon other taxing districts, or be co-extensive therewith, which is to be considered in determining the limit of its bonded debt.

HOLDEN, P. J., delivered the opinion of the court.

The suit was to validate an issue of eighty thousand dollars of road bonds of supervisors district No. 3 of Tallahatchie county. After due notice given, as required by the validating statute, the appellant herein appeared and objected to the validation of the bonds, whereupon, after a full hearing, the chancellor decreed that the bonds were valid, and this appeal is from that decree.

The board of supervisors of Tallahatchie county, in 1910, adopted an order bringing beat 2 and beat 3 of said county under the provisions of chapter 149, Laws of 1910, providing for the issuance of bonds for the construction, repair, and maintenance of public highways, and, after publication of notice of the board's intention to issue bonds, issued bonds in the sum of twenty-five thousand dollars at that time for the purposes named. The board again, in 1919, issued thirty-five thousand dollars of bonds for said district under authority of chapter 149 of the Laws of 1910, and on March 3, 1925, the board entered an order finding that district No. 3 had been previously brought under the provisions of chapter 149 of the Laws of 1910, and amendments thereto, and that it was for the best interest of said district to issue bonds to the amount of eighty thousand dollars, and declared

its intention to issue such bonds, and called an election thereon, which resulted in favor of the issuance of the eighty thousand dollars of bonds involved in the case before us. No petition by twenty per cent. of the electors was filed requesting the issuance of the eighty thousand dollar bond issue, but an election was held for that purpose.

The decree of the chancellor validating the eighty thousand dollar bond issue is attacked upon several grounds, but it is our opinion that there is no reversible merit in any of them, and we shall not discuss them except in a brief way.

We think the road district No. 3, here involved, was legally created and organized under chapter 149, Acts of 1910. The minutes of the board showed the jurisdictional facts, that is, that more than twenty per cent of the qualified electors petitioned for the road district, even though the petition, or petitions, was for the organization of two districts at the same time, namely, beat 2 and beat 3 of Tallahatchie county; and, furthermore, the subsequent minutes of the board, and the order of 1925 for the issuance of the eighty thousand dollar bonds here involved, fully complied with the requirement as to showing the necessary jurisdictional facts with reference to the bond issue of road district No. 3 now under review.

Second, we do not think that a petition of the electors was required to be filed asking for the issuance of the eighty thousand dollar bonds in 1925, because the board had authority to issue such bonds whenever it appeared to be for the best interest of the district, and chapter 207 of the Laws of 1920, which does not provide for a petition for the issuance of bonds, governed as against chapter 277 of the Laws of 1920, which authorizes the creation of road districts, when the eighty thousand dollar bond issue was ordered in 1925. Under the said chapter 149, Laws 1910, and all of the amendments thereto, a petition for a second issuance of bonds is not required,

but under subsequent acts an election for that purpose was all that was required. In the case before us an election was held which authorized the issuance of the bonds.

We think that section 5 of chapter 207 of the Laws of 1920, which provides that "no . . . separate road district shall issue bonds under the authority of this act to an amount that added to the outstanding bonded or floating debt of such . . . separate road district will amount to more than fifteen per cent. of the assessed value of the taxable property in such . . . separate road district," means that the issuance of bonds in and for any particular separate road district shall not exceed fifteen per cent of the assessed value of the taxable property in such district, the contemplated bond issue when added to all other outstanding bonded or floating debts of such particular district, which the whole district has caused or incurred, must not exceed fifteen per cent. of the assessed value of the taxable property in such district, otherwise the statute involved gives no authority to incur the new obligation by the district. This principle seems to have been announced in the case of *Love* v. *Board of Supervisors,* 111 Miss. 802, 72 So. 230. But even without the light of that decision we would be led to the conclusion indicated above.

Therefore it is our judgment that the fifteen per cent. limit on the issuance of bonds has not been violated in the case before us, even though the aggregate amount of the bonds in the district, including the bonds issued for an overlapping drainage district or a drainage district lying within the separate road district, would exceed fifteen per cent of the assessed value of the taxable property of the separate road district, since the bonded debt due by the drainage district is not for a bond issue by the road district, but is to be met by special assessment only against the particular property benefited by the drainage district improvement.

The decree of the lower court is affirmed.

*Affirmed.*